**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
VENKAREDDY CHENNAREDDY,          )
*et al.*,                        )
                Plaintiffs,      )
                                )
        v.                       )   Civ. Action No. 87-3538 (EGS)
                                )
GENE DODARO,[1] Acting           )
Comptroller General,             )
                                )
                Defendant.       )
_____ )
                                )
VENKAREDDY CHENNAREDDY,          )
                                )
                Plaintiff,       )
                                )
        v.                       )   Civ. Action No. 01-0517 (EGS)
                                )
GENE DODARO, Acting              )
Comptroller General,             )
                                )
                Defendant.       )
_____ )
                                )
ARTHUR L. DAVIS, *et al.*,        )
                                )
                Plaintiffs,      )
                                )
        v.                       )   Civ. Action No. 06-1002 (EGS)
                                )
GENE DODARO, Acting              )
Comptroller General, and         )
MARY E. LEARY,[2] Chair,         )
Personnel Appeals Board,         )
                                )
                Defendants.      )
_____ )

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Dodaro, in his official capacity as Acting Comptroller General of the United States, is automatically substituted as the named defendant.

[2]  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Leary, in her official capacity as Chair of the Personnel Appeals Board, is automatically substituted as the named defendant.

```
_____
                              )
JAMES D. MOSES,               )
                              )
          Plaintiff,          )
                              )
     v.                       )   Civ. Action No. 06-1712 (EGS)
                              )
GENE DODARO, Acting           )
Comptroller General, and      )
MARY E. LEARY, Chair,         )
Personnel Appeals Board,      )
                              )
          Defendants.         )
_____)
```

## MEMORANDUM OPINION

Pending before the Court[3] are the above-captioned four employment discrimination actions against the Government Accountability Office ("GAO" or the "agency").[4]  With the exception of one plaintiff, who is still employed by the GAO, plaintiffs in these actions are all former employees of the agency.  Throughout the lengthy litigation of these cases, plaintiffs have essentially treated these actions as if they are one unitary case, relying on many of the same factual allegations and legal theories in each of the cases.  As a result, and in the interest of judicial economy, this Memorandum Opinion will

---

[3]  These cases were randomly reassigned to this Court in November 2007 upon the death of the Honorable John G. Penn.  Unless otherwise noted, this Memorandum Opinion will not distinguish between actions taken by Judge Penn and this Court.

[4]  The GAO "is a legislative support agency responsible for auditing, investigating, reporting on and proposing improvements to the programs and financial activities of executive agencies in the federal government." *Gen. Accounting Office v. Gen. Accounting Office Personnel Appeals Bd.*, 698 F.2d 516, 518 (D.C. Cir. 1983).

address and resolve the issues pending before the Court in all of the pending actions.  In so doing, however, the Court emphasizes that these cases have not been consolidated for any purpose. This Memorandum Opinion, moreover, should in no way leave the parties with the impression that the Court views these cases as inextricably related.  To the contrary, the discussion below should make clear why – aside from the fact that some of the cases involve overlapping plaintiffs and all of the cases include allegations of age discrimination against the GAO – each case involves separate issues that must be addressed individually.

## I.   Overview

Each of the cases pending before the Court has a long, complicated history largely characterized by undue delay owing to a variety of factors.  The background information set forth below will be far from comprehensive, and will include an overview of each case only insofar as is necessary to provide sufficient information for a discussion and resolution of the issues currently before the Court.[5]

---

[5]  Upon reassignment of these cases to this Court in the fall of 2007, and in the interest of preserving both the parties' rights and judicial economy, and without objection from anyone, all pending motions were denied without prejudice or as moot.  This Court subsequently referred all of the cases to a magistrate judge for a report and recommendation on dispositive motions.  The following discussion will include a brief explanation of how the cases have progressed since that time.

A.   *Chennareddy et al.*, Civil Action No. 87-3538

The original complaint in this case ("*Chennareddy I*") was filed in December 1987 by then GAO employee Venkareddy Chennareddy ("Chennareddy")[6] as a general class complainant, in addition to Sandra Thiabault, Roger Carroll, Hector Rojas, and "an unnamed GS-15 Employee of the United States General Accounting Office Representing Himself and All Other GS-15's [sic] Similarly Situated" as "Sub-Class Complainants." Plaintiffs sought to represent a class of GAO employees who had been discriminated against in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* In March 1989, after this case was consolidated with another action involving the same allegations and many of the same plaintiffs, the Court (1) struck the unnamed plaintiffs from the complaint, and (2) dismissed the actions for failure to exhaust administrative remedies.[7] Chennareddy appealed, and the D.C. Circuit held that exhaustion was not required "under GAO regulations governing ADEA claims at the time Chennareddy brought his claim in the District Court." *Chennareddy v. Bowsher*, 935 F.2d 315, 322 (D.C. Cir. 1991).

---

[6] Chennareddy, who was the last of the *Chennareddy I* plaintiffs to separate from the GAO, left his employment on January 3, 2006. (He claims that he was constructively discharged because of his age.)

[7] During this time frame, the Court also granted in part and denied in part a motion to intervene. The result of this and other rulings is that there are now twelve named plaintiffs in this action.

In the years following remand from the D.C. Circuit, the parties engaged in a lengthy period of class discovery, followed by the filing of a second amended complaint.  On September 16, 1993, Plaintiffs filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23.  That motion defined the class as follows:

> Every person who was employed by the United States General Accounting Office during all or part of the time period beginning September 17, 1983 to date who:
>
> 1.  was classified as an evaluator or evaluator related professional person, GS-12 through GS-15 (or equivalent)[8] during any part of that time; and
>
> 2.  had reached the age of 40 before or during that time.

*Chennareddy I*, Docket No. 155.  According to plaintiffs, the class would be comprised of more than 1,500 individuals.  *See Chennareddy I*, Docket No. 155.

On March 20, 1995, the Court denied plaintiffs' motion for class certification.  *See* Mem. Order, *Chennareddy I*, Docket No. 202  ("Class Cert. Order").  The Court concluded that although plaintiffs met the "numerosity" requirement of Federal Rule of Civil Procedure 23(a) (i.e., the number of potential plaintiffs would make joinder impractical), plaintiffs were unable to meet

---

[8]  As the Court explained in its March 20, 1995 Memorandum Order, in 1989 the GAO converted from a "GS" to a "band" system for the relevant positions.  This switch resulted in GS-12 employees becoming part of Band 1; GS-13 and -14 employees becoming part of Band 2; and GS-15 employees becoming part of Band 3.  *See* Mem. Order at 2 n.1, *Chennareddy I*, Docket No. 202.

the remaining requirements of the Rule.  *See* Class Cert. Order at
3-4.  As the Court explained, plaintiffs had not demonstrated
either that there were legal or factual issues common to all
class members' claims, or that the class representatives' claims
were typical of the class members' claims.  Specifically, the
Court noted that plaintiffs had failed to adduce evidence showing
that the alleged discrimination "manifested itself in a
particular employment *practice* leveled against all members of the
proposed class."  Class Cert. Order at 4 (emphasis in original)
(citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15
(1982) ("Title VII prohibits discriminatory employment *practices*,
not an abstract policy of discrimination.")); *see also* Class
Cert. Order at 7 ("[P]laintiffs provide no basis for concluding
that 1,500 employees suffer from a common discriminatory
practice.").

The Court further concluded that certification was improper
because plaintiffs had not shown that they could "'fairly and
adequately protect the interests of the class.'"  Class Cert.
Order at 9 (quoting Fed. R. Civ. P. 23(a)(4)).  In this regard,
the Court found that a "direct intra-class conflict" existed
among members of the class, because "a class comprised of GS-12,
-13, -14, and -15 level employees would place some class members
in the awkward position of challenging other members who
participated in the promotion process."  Class Cert. Order at 10.

Finally, the Court recognized that it had the authority to narrow the class, divide it into subclasses, or permit potential class members to opt out of the class.  Class Cert. Order at 11.  The Court declined to do so, however, because such measures "would not cure the defects in this case.  Plaintiffs would still have failed to identify a discriminatory practice or policy affecting promotion decisions at the GAO."  Class Cert. Order at 11.

In response to this ruling, plaintiffs filed motions to alter the class-certification judgment, for an evidentiary hearing, for leave to expand discovery, and for various forms of emergency injunctive relief.  Those motions were all denied by the Court without reaching the merits of the arguments raised therein.  In April and May 2000, plaintiffs filed a new round of motions, including a (1) motion for leave to file a third amended complaint, which included a request to add the GAO's Personnel Appeals Board ("PAB") as a defendant; (2) renewed motion for class certification; (3) motion to add three new party intervenors;[9] (4) motion for reconsideration of all pending motions; (5) motion for partial summary judgment; and (6) motion for a preliminary injunction.

At a status hearing on March 10, 2005 (before the merits of any of the pending motions had been addressed by the Court),

---

[9]  Those purported intervenors were Arthur L. Davis, Jimmie Gilbert, and James D. Moses, plaintiffs in Civil Action No. 06-1002.  (Moses is also the plaintiff in Civil Action No. 06-1712.)

plaintiffs sought "additional limited discovery which they
believe may impact the pending motions in this case."  Order,
*Chennareddy I*, Docket No. 330  (Mar. 14, 2005).  Their subsequent
motion for discovery, filed at the Court's order, addressed
plaintiffs' discovery of the existence of "GAO computerized data
files recording essentially all of the information relevant to
Plaintiff's [sic] claims.  That system is maintained by Robert
Mowbray, Director of the Statistical Applications Software
department."  Pls.' Motion for Additional Disc. at 3, *Chennareddy
I*, Docket No. 332.  Plaintiffs argued that the agency had falsely
represented that no such data existed, and additional discovery
related to the "data system" would support plaintiffs' pending
motions.  Pls.' Motion for Additional Disc. at 7, *Chennareddy I*,
Docket No. 332.  Specifically, plaintiffs claimed that the
additional discovery would support both plaintiffs' request for
class certification and amendment of the complaint to include the
PAB.  Pls.' Motion for Additional Disc. at 7, *Chennareddy I*,
Docket No. 332.  On September 11, 2006, plaintiffs filed a motion
for leave to file a fourth amended complaint, to add the PAB as a
defendant and three new party intervenors, and for
reconsideration of several motions.  In addition, on November

27, 2006, plaintiffs filed a motion to consolidate pursuant to Federal Rule of Civil Procedure 42(a).[10]

With the exception of those motions that had become moot, all of the above-described motions that had been filed since April 2000 were pending when the case was transferred to this Court in 2007.  After the Court denied without prejudice all pending motions, plaintiffs filed (1) their fourth amended complaint, and (2) a renewed motion to intervene on behalf of Davis, Moses, and Gilbert.  Those motions were referred to a magistrate judge for a Report and Recommendation.  The magistrate judge denied both plaintiffs' request for discovery prior to a ruling on the motion to intervene, in addition to the motion itself.[11]  The GAO then filed a motion for a more definite statement and partial motion to dismiss, and plaintiffs filed a motion to compel the GAO's electronic personnel data.  On February 4, 2009, the magistrate judge granted defendant's motion for a more definite statement, denied without prejudice the partial motion to dismiss, and denied plaintiffs' motion to compel.

---

[10]  Plaintiffs sought to consolidate all four of the actions; as such, similar motions were filed in all of the cases around this time.

[11]  Both of those rulings were affirmed on appeal to this Court, *see* Order dated December 17, 2008, and will not be further addressed in this Memorandum Opinion.

B.  *Chennareddy*, Civil Action No. 01-0517

Chennareddy, acting *pro se*, filed a complaint in this separate case ("*Chennareddy II*") in March 2001, alleging age discrimination in violation of the ADEA and gender and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* These claims were based on two specific promotion announcements for which he had not been chosen, in addition to a continuing violation claim based on "all promotions since 1982."  Compl. at 3-4, 8, *Chennareddy II*, Docket No. 1.  Chennareddy subsequently withdrew his gender-based discrimination claim at the initial hearing, and the parties proceeded to discovery.  *See* Scheduling Order, *Chennareddy II*, Docket No. 10.[12]  On July 31, 2001, Chennareddy filed a motion "to approve the plaintiff's claim of continuing discrimination violation since January 1982 on the basis of age, brown color, and national origin."  *See Chennareddy II*, Docket No. 11.

In April 2002, after having granted multiple requests by the parties to extend discovery, the Court granted (1) Chennareddy's unopposed motion for leave to amend the complaint, and (2) the parties' joint motion to extend discovery through August 19, 2002.  *See Chennareddy II*, Docket Nos. 27, 28.  Chennareddy's

---

[12]  The Scheduling Order issued on July 20, 2001 also included a referral to a magistrate judge for discovery purposes.

amended complaint includes five claims of discrimination based on "brown color, national origin, and age" arising from his not being selected for promotions between 1982 and 2002. Amended Compl. at 1, 3-5, 9, 12, *Chennareddy II*, Docket No. 29. On August 19, 2002,[13] Chennareddy filed a motion to compel certain data requested during discovery, in addition to "all such similar data which has now been discovered to exist in readily available form in the GAO data files maintained by Bob Mobray, PHD." *Chennareddy II*, Docket No. 34. In that motion, Chennareddy also sought to extend discovery for an additional sixty days. *Chennareddy II*, Docket No. 34.

On October 11, 2002, the Court construed Chennareddy's July 31, 2001 motion as one for partial summary judgment and denied the motion without prejudice. *See* Mem. Order at 1-2, *Chennareddy II*, Docket No. 43. Specifically, the Court concluded that there were both factual and legal disputes that made the motion premature, and that the parties had not addressed relevant legal authority regarding the validity of the continuing violation doctrine. *See* Mem. Order at 2, *Chennareddy II*, Docket No. 43 (citing, *inter alia*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). The magistrate judge proceeded to deny Chennareddy's motion to compel and for an extension of discovery

---

[13] The following day, counsel entered an appearance on plaintiff's behalf. *See Chennareddy II*, Docket No. 35.

on December 20, 2002, and Chennareddy filed a motion for reconsideration of that decision shortly thereafter.  *See Chennareddy II*, Docket Nos. 49, 51.  On September 30, 2003, the Court denied the motion for reconsideration.  *See* Mem. Order at 2, *Chennareddy II*, Docket No. 61.

Pending at the time that this case was transferred to this Court were (1) defendant's partial motion to dismiss the amended complaint or, in the alternative, for partial summary judgment; and (2) plaintiff's motion to consolidate pursuant to Federal Rule of Civil Procedure 42(a).  In April 2008, after the transfer of the case to this Court, defendant renewed its motion for partial dismissal or summary judgment, and Chennareddy filed a cross motion seeking to (1) consolidate the case with *Chennareddy I*, (2) reopen discovery, and (3) amend his complaint to plead a hostile work environment claim.  In February 2009, the magistrate judge denied all of the requests in plaintiffs' cross-motions, and recommended that the Court grant defendant's motion for partial summary judgment and deny as moot defendant's motion for partial dismissal.  *See Chennareddy II*, Docket Nos. 85, 86.

### C. *Davis et al.*, Civil Action No. 06-1002 and *Moses*, Civil Action No. 06-1712

Plaintiffs in *Davis et al.* – Arthur L. Davis, Jimmie Gilbert, and James D. Moses – filed their complaint on May 31, 2006 against the GAO and the PAB.  While Gilbert and Davis allege that they were constructively discharged from the GAO in 1999 and

2004, respectively, Moses remains an employee.  Compl. at 4,
*Davis et al.*, Docket No. 1.  Like the plaintiffs in *Chennareddy
I*,[14] plaintiffs in this action seek to represent a class of
similarly situated individuals in bringing suit against
defendants for maintaining an "unwritten . . . policy and
practice" of using age "as a determinative detrimental factor in
personnel decisions."  Compl. at 3, *Davis et al.*, Docket No. 1.
Based on this policy and the PAB's failure to timely process
plaintiffs' administrative complaints, plaintiffs allege that
defendants violated the ADEA, the Equal Pay Act, and the Due
Process and Equal Protection Clauses of the Fifth and Fourteenth
Amendments to the U.S. Constitution.  Compl. at 5, *Davis et al.*,
Docket No. 1.

Plaintiffs seek a declaratory judgment; "front pay, back
pay, increased retirement benefits," attorneys' fees;
reinstatement to positions "comparable to the position each
Plaintiff held at the time of termination"; and injunctive relief
to prevent the GAO "from hiring, promoting any employee, or
transferring any employee under the age of 40."  Compl. ¶¶ 50,
61, 68(c), *Davis et al.*, Docket No. 1.  Plaintiffs also seek an
injunction requiring the PAB to perform "data analysis as is
necessary to . . . to determine the validity or non-validity of

_____

[14] As noted above, in 2000, plaintiffs sought "without success" to
intervene in *Chennareddy I*.  Compl. at 4, *Davis et al.*, Docket No. 1; *see
supra* note 9.

the existence of the promotion system . . . ; and further to
perform such analysis as is necessary to determine by logical
groupings the actual damages to each and every Plaintiff and
putative class member." Compl. ¶ 62, *Davis et al.*, Docket No 1.

In addition to being a named plaintiff in *Davis et al.*,
Moses filed a separate class action complaint against the GAO and
the PAB in October 2006. *See* Compl., *Moses*, Docket No. 1. The
*Moses* complaint acknowledges that "[t]his new lawsuit is somewhat
duplicative of the facts as stated in" *Davis et al.*, and includes
similar allegations of "a number of prohibited personnel
practices and denials of rights in sum amounting to age
discrimination in violation of the [ADEA], and equal treatment
under the law." Compl. at 7, *Moses*, Docket No. 1.[15] Moses also
seeks to represent a class of approximately 400 GAO auditors "who
were downgraded and/or denied cost of living increases [COLAs] by
action of the GAO management effective on February 16th, 2006."
Compl. at 1, 6, *Moses*, Docket No. 1. Moses seeks relief similar
to what is requested in *Davis et al.*, and also seeks relief
designed to reverse the discriminatory impact of the (1) alleged
COLA denials; and (2) Band II "split" or "restructuring," whereby
employees were divided into two stratified groups in an alleged

---

[15] As in *Davis et al.*, Moses's complaint includes the PAB as a
defendant because "it failed to perform its statutory function to investigate,
follow up and prosecute to correct age discrimination violations which it well
knew existed." Compl. at 3, *Moses*, Docket No. 1.

attempt to "intimidate older employees into leaving" their employment. Compl. at 8-9, 16, 18, *Moses*, Docket No. 1.

From the filing of the complaints in *Davis et al.* and *Moses* to the time that the cases were transferred to this Court, a number of motions remained unresolved. Like the complaints themselves, the motions in the two cases tracked each other closely and included plaintiffs' requests to consolidate both cases into *Chennareddy I* and for class certification, and defendants' requests to stay discovery and class certification and for dismissal in whole and in part of the actions. After the transfer of the cases to this Court, defendants filed renewed motions (1) to dismiss the complaint in *Davis et al.* pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and (2) to dismiss all claims in *Moses* except the age discrimination claim based on the Band II restructuring.[16] After these motions were fully briefed, the magistrate judge issued orders in both actions in which she noted that the parties had attached exhibits to the briefing on the motions, none of which could properly be

---

[16] The *Davis et al.* plaintiffs also made a renewed attempt to consolidate their case with *Chennareddy I*, and "a former Band II employee" filed a motion to intervene in the *Moses* action on behalf of himself and "about 60 similarly situated class members who, like himself, retired rather than suffer the indignity of a demotion and cost of living denials." Mot. to Intervene at 1, *Moses*, Docket No. 54. Plaintiffs in both cases requested discovery prior to a hearing on these motions. The magistrate judge denied both the requests for discovery and the underlying motions, and these decisions were affirmed by this Court on appeal. These rulings – in addition to the magistrate judge's denial of Moses's renewed motion for a declaratory judgment that he "substantially prevailed as to his individual claims in this case," which has not been appealed – will not be revisited.

considered by the Court in the context of a motion to dismiss. The magistrate judge then ordered that the briefing on the motions be stricken from the record, and set a briefing schedule for renewed briefing.  *See* Mem. Order at 3-4, *Moses*, Docket No. 83; Mem. Order at 3-4, *Davis et al.*, Docket No. 57.  In view of the objections filed by plaintiffs in both actions, this Court vacated the deadlines put in place by the magistrate judge, "with a new briefing schedule to be imposed if appropriate."  *Davis et al.*, Minute Order (Mar. 2, 2009).

## II.  Discussion

As the background sections make clear, plaintiffs in these actions consider their cases to be related and subject to consolidation, while the Court has repeatedly affirmed its view that the cases raise distinct issues and should be litigated separately.  The result of plaintiffs' approach, in addition to the nature of the actions, is that many of the same issues – both legal and factual – have arisen in most or all of the cases. Accordingly, the Court will first discuss the issues that bear on multiple actions, and then will proceed to address all issues currently pending in each case.

A.    **Issues Common to Some or All of the Cases**

    1.    **The PAB**

As a preliminary matter, the Court must address plaintiffs' attempts to include the PAB as a defendant in all but *Chennareddy II*. Plaintiffs in the three other cases seek to hold the PAB accountable for its alleged failure to timely and appropriately address their administrative claims of discrimination. Defendants argue, however, that the PAB is not and cannot be made a proper party to these cases for a variety of reasons. For the following reasons, this Court agrees that the PAB is not a properly named defendant in any of the cases, and will therefore be dismissed with prejudice from the actions.

The GAO "is a legislative branch agency for which the United States Congress has created a personnel system separate from the system of the executive branch." *Chennareddy*, 935 F.2d at 319 (citing 31 U.S.C. § 731 *et seq.*). Because GAO employees "have the same rights and remedies" under anti-discrimination laws as do executive branch employees, "Congress directed that the PAB have the same authority over equal employment opportunity and discrimination matters at GAO as its counterpart agencies," such as the Equal Employment Opportunity Commission ("EEOC"). *Id; see also Gen. Accounting Office v. Gen. Accounting Office Pers. Appeals Bd.*, 698 F.2d 516, 518 (D.C. Cir. 1983). "The PAB's function in the administration and processing of discrimination

17

complaints, therefore, is analogous to the function performed by the EEOC in the executive branch." *Chennareddy*, 935 F.2d at 319.

With this understanding of the PAB's role in mind, it becomes clear that plaintiffs' claims against the PAB must be dismissed.  It is well-established that Title VII does not provide a cause of action for complaints regarding the EEOC's processing of administrative discrimination complaints.  *See, e.g.*, *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) (concluding that a federal employee had no cause of action under Title VII to bring a claim against the EEOC for its failure to process her discrimination complaint); *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) ("Congress has not authorized, either expressly or impliedly, a cause of action against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an employment discrimination charge."); *Keeley v. Small*, 391 F. Supp. 2d 30, 45 (D.D.C. 2005) (concluding that plaintiff's claims relating to employer's alleged interference in the EEOC's investigation was not cognizable under Title VII). Plaintiffs cite to no authority that would distinguish these cases or support a similar cause of action for challenging the PAB's processing of discrimination complaints under Title VII or the ADEA.  Because the PAB's role is analogous to that of the

EEOC,[17] and in the absence of any cause of action authorizing plaintiffs to challenge the processing of their discrimination complaints by an agency charged with such a function, this Court concludes that it lacks subject matter jurisdiction to consider claims raised against the PAB.[18] *Cf. Storey v. Rubin*, 976 F. Supp. 1478, 1484 (N.D. Ga. 1997) (concluding that neither Title VII nor the ADEA "creates a right or action or confers on this Court jurisdiction over a claim by a federal employee against the EEOC, or any other agency, challenging any aspect of the administrative processes (or any application of that process) by which complaints of discrimination are investigated and resolved").

---

[17] With respect to plaintiffs' attempt to cast the PAB as somehow colluding with the GAO, the Court simply notes that this unsubstantiated allegation is in fundamental contradiction to the PAB's status "as a discrete, independent entity." *Gen. Accounting Office*, 698 F.2d at 531 (acknowledging that the reason for creating the PAB was to "preserve the essential employment rights of GAO staff members").

[18] To the extent that plaintiffs seek relief against the PAB under any other legal theory, those claims are dismissed because they were not addressed in any opposition to the motions filed by defendants seeking dismissal of such claims.   Even if the Court were to reach the merits of such claims, they would be dismissed for the reasons advanced by defendants.

2.   **Procedural Requirements under the
ADEA and Related Equitable
Doctrines**[19]

Plaintiffs have all raised claims under the ADEA, which
"broadly bars age discrimination in employment." *Rann v. Chao*,
346 F.3d 192, 195 (D.C. Cir. 2003).  The ADEA permits federal
employees to choose one of two mechanisms for pursuing an age
discrimination claim.  *See, e.g.*, *Stevens v. Dep't of Treasury*,
500 U.S. 1, 5-6 (1991); *Rann*, 346 F.3d at 195.  First, an
employee may pursue his claim through the agency's administrative
process "and then file a civil action in federal district court
if he is not satisfied with his administrative remedies."
*Stevens*, 500 U.S. at 5-6 (citing 29 U.S.C. § 633a(b)-(c)).  A GAO
employee who chooses to utilize the agency's administrative
process must comply with the regulations promulgated by the GAO
for filing discrimination complaints with the agency.  *See, e.g.*,
4 C.F.R. § 28.98; GAO Order 2713.2, attached as Ex. 9 to Pls.'
Opp'n to Def.'s Mot. Dismiss, *Davis et al.*, Docket No. 38.  Like
EEO regulations governing federal employees, GAO Order 2713.2
requires an aggrieved employee to consult informally with a
counselor within forty-five days of the allegedly discriminatory
action.  GAO Order 2713.2.  GAO regulations, in turn, provide for

[19] Assessing a plaintiff's compliance with the ADEA notice requirements
and evaluating the applicability of equitable doctrines are fact-specific
inquiries that will necessarily require separate analysis in each of the
actions where such issues have been raised.  Nevertheless, a basic background
of the legal standards is appropriate at this juncture to avoid repetition in
the sections that follow.

the filing of both individual and class discrimination
complaints.  *See* GAO Order 2713.2.  An employee may file a
complaint in the district either within 90 days of receiving a
final decision or dismissal by the GAO, or "[a]nytime after 180
days has elapsed from the date the complaint was filed, provided
that GAO has not issued a final decision."  GAO Order 2713.2.[20]

Alternatively, the employee may elect to bypass the agency's
administrative process altogether and "decide to present the
merits of his claim to a federal court in the first instance."
*Stevens*, 500 U.S. at 6 (citing 29 U.S.C. § 633a(d)).  At least
thirty days prior to bringing suit in the district court,
however, the employee must first file a Notice of Intent to Sue
with the agency, in this case the GAO's Office of Opportunity and
Inclusiveness.  *See* § 633a(d).  This notice must be filed within
180 days of the occurrence of the alleged discriminatory act.
*Id.*

Failure to comply with either of the above-described
procedures constitutes a failure to exhaust administrative
remedies and bars an employee from bringing suit in federal

---

[20]  As an alternative to filing a complaint in the district court, a GAO
employee may seek review from the PAB.  An appeal from a decision by the PAB,
however, must be pursued in the Federal Circuit.  *See* 31 U.S.C. § 755(a)
(granting exclusive jurisdiction to the Federal Circuit to conduct a limited
administrative record review of decisions by the PAB); *Ramey v. Bowsher*, 9
F.3d 133, 134, 136 (D.C. Cir. 1993) (noting that PAB "decisions under [31
U.S.C.] § 753(a)(7) are subject to judicial review" under 31 U.S.C. § 755(a),
and holding that "[o]nce an employee invokes the [PAB's] adjudicatory
authority in a discrimination case, the employee . . . is constrained to
follow the clear path of judicial review set forth in § 755(a)").

court.  *See Rann*, 346 F.3d at 198-99 (holding that where a federal employee failed to comply with the requirements of § 633a(d), he could not "proceed to federal court by that route," and upholding the district court's dismissal for failure to exhaust); *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) (explaining that exhaustion of administrative remedies is required under the ADEA); *Singleton v. Potter*, 402 F. Supp. 2d 12, 33 (D.D.C. 2005) (reiterating the well-established proposition that exhaustion of administrative remedies is a prerequisite to filing under the ADEA). Nevertheless, the administrative remedies under ADEA "are not jurisdictional in nature: 'they function like a statute of limitations and like a statute of limitations, are subject to waiver, estoppel, and equitable tolling.'" *Singleton*, 402 F. Supp. 2d at 33 (quoting *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985)); *see also, e.g.*, *Breen v. Peters*, 529 F. Supp. 2d 24, 27 (D.D.C. 2008) ("The non-jurisdictional 180-day filing deadline stated in 29 U.S.C. § 633a(d) is subject to equitable tolling in the proper circumstances.").

Plaintiffs in the pending actions raise both equitable tolling and estoppel in an effort to avoid dismissal for failure to exhaust.  "Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of

her claim." *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998).  Equitable estoppel, on the other hand, "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).

It is well-established, however, that the equitable power of the Court is to "be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  Indeed, plaintiffs' burden of demonstrating the applicability of equitable estoppel is particularly onerous, because the D.C. Circuit has "read the Supreme Court's powerful cautions against application of the doctrine to the government as normally barring its use to undercut statutory exhaustion requirements." *See Rann*, 346 F.3d at 197 (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419-24 (1990), and *Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1214 (D.C. Cir. 1998)).  To the extent exhaustion and related doctrines are at issue in each of the cases, they will be addressed individually in Section II.B below.

### 3.   Continuing Violations and *National Railroad Passengers Corp. v. Morgan*

Plaintiffs in all of the pending cases rely on the legal theory of continuing violations to argue that the exhaustion

requirements discussed above are not a bar to their claims.  In
other words, they contend that – despite the fact that many of
the discriminatory actions alleged fall outside the requisite
period for filing under Title VII and the ADEA – their claims are
timely because they are part of a continuing violation by the
GAO.  This theory, however, is squarely foreclosed by *National
Railroad Passengers Corp. v. Morgan*, 536 U.S. 101 (2002).
Therefore, any claims in these actions that are premised on such
a theory must fail as a matter of law.

In *Morgan*, the Supreme Court considered the timeliness of
the plaintiff's Title VII claims, which were based on allegations
of both "discrete discriminatory and retaliatory acts and . . . a
racially hostile work environment throughout his employment."
*Id.* at 104.  The Court rejected the Ninth Circuit's holding below
that a plaintiff could establish a continuing violation – and
thereby recover for claims that were filed outside the Title VII
limitations period – so long as the plaintiff could show either
(1) a series of sufficiently related violations that occurred
both within and outside of the limitations period, or (2) a
systemic policy or practice of discrimination that operated, in
part, within the limitations period.  *See id.* at 107-08.  As the
Court explained, "discrete discriminatory acts are not actionable
if time barred, even when they are related to acts alleged in

24

timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.* at 112.

The *Morgan* Court did carve out hostile work environment claims as an exception to the bar on the doctrine of continuing violations.  Acknowledging that such claims "are different in kind from discrete acts" and that "[t]heir very nature involves repeated conduct," the Court concluded that where "an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.* at 115, 117.

Plaintiffs endeavor to circumvent the Supreme Court's holding in *Morgan* by recasting their allegations of a discriminatory pattern of non-promotions and downgraded performance ratings as hostile work environment claims.  *See, e.g.*, *Chennareddy II*, Pl.'s Opp'n to Def.'s Mot. Dismiss at 5, 9, 11, Docket No. 76 (describing "a 'hostile work environment' consisting of a near absolute bar to fair performance ratings and promotions for all older employees," and requesting an opportunity, if necessary, to "re-plead his claims to conform to the allegations of hostile environment which he now knows is applicable"); *Davis et al.*, Compl. at 12-13, Docket No. 1 (alleging that the impact of discriminatory policies such as lowering ratings, denying advancements, failure to promote, and

denial of cost of living increases "has created a hostile work environment"); *Moses*, Compl. at 18-19, Docket No. 1 (same).  This argument is unavailing, and the Court rejects it.  The types of discriminatory acts alleged by plaintiffs clearly fall within the category of discrete acts envisioned by the *Morgan* Court.  *See* 536 U.S. at 114-15 (noting that "discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify," and holding that any "discrete discriminatory acts" that took place before the statutory limit (in that case, 300 days) were "untimely filed and no longer actionable" (emphasis added)).

Furthermore, the claims advanced by plaintiffs have not been recognized under the traditional framework for hostile work environment claims, which are "different in kind from" discrete discriminatory acts.  *Id.* at 115.  Such claims may arise "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* at 116  (alterations and internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).  Indeed, another judge on this Court has persuasively explained the distinction

between these types of claims, in addition to the perils of
permitting plaintiffs to conflate the two:

> The dangers of allowing standard disparate treatment
> claims to be converted into a contemporaneous hostile
> work environment claim are apparent.  Such an action
> would significantly blur the distinctions between both
> the elements that underpin each cause of action and the
> kinds of harm each cause of action was designed to
> address.  A hostile work environment under Title VII
> must be based on one unlawful employment practice of
> pervasive, insulting, discriminatory conduct that makes
> the plaintiff's day-to-day work environment severely
> abusive.  Therefore, cobbling together a number of
> distinct, disparate acts will not create a hostile work
> environment.  For example, if an employee is
> discriminatorily denied ten promotions over a period of
> time, that pattern of conduct may give rise to ten
> separate claims under Title VII, but it would not
> create a hostile work environment claim based on
> pervasive intimidation, insult and ridicule.  This is
> particularly true here because plaintiff failed to
> exhaust administrative remedies for many of the
> discrimination and retaliation claims that he now
> incorporates into a hostile work environment claim.

*Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 82 (D.D.C. 2007)

(alterations, citations, and internal quotation marks

omitted)(Huvelle, J.); *see also Edwards v. EPA*, 456 F. Supp. 2d

72, 96 (D.D.C. 2006); *Childs-Pierce v. Util. Workers Union of

Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005).

The *Rattigan* court's reasoning applies with equal force in

these cases, and clearly demonstrates why plaintiffs' attempt to

raise hostile work environment claims is unavailing.  Plaintiffs

have raised claims that are characteristically discrete

employment actions, and the conclusory invocation of the term

"hostile work environment" is insufficient to transform the

27

nature of their claims.  *See Rattigan*, 503 F. Supp. 2d at 81
("Plaintiff should not be permitted to 'bootstrap' his alleged
discrete acts of discrimination and retaliation into a broader
hostile work environment claim." (quoting *Keeley v. Small*, 391 F.
Supp. 2d 30, 51 (D.D.C. 2005)); *Lester v. Natsios*, 290 F. Supp.
2d 11, 31-33 (D.D.C. 2003) (rejecting the plaintiff's argument
that "the specific alleged incidents of discrimination she has
raised collectively constitutes a hostile work environment";
noting that "it is not at all clear that mere reference to
alleged disparate acts of discrimination against plaintiff can
ever be transformed, without more, into a hostile work
environment claim").  Whether any time-barred claims may
nevertheless be considered in view of the equitable
considerations advanced by plaintiffs will be discussed in the
context of each individual action.  Any attempt by plaintiffs,
however, to invoke the continuing violations doctrine to salvage
otherwise untimely claims will not be entertained by this Court.

### 4.    Electronic Personnel Information
####        Maintained by the GAO

A central component of plaintiffs' claims in these cases
revolves around their allegation that the GAO has a centralized,
comprehensive "database" of electronic personnel information that
(1) is maintained by GAO employee Bob Mobray; (2) has been used
in implementing the discriminatory practices alleged by
plaintiffs, and, if disclosed to plaintiffs, will essentially

28

"prove" all of their claims; and (3) has been wrongfully and in
bad faith withheld from plaintiffs during the pendency of these
actions.  The GAO vehemently disputes plaintiffs'
characterization of the agency's electronic personnel
information, arguing, *inter alia*, that (1) the data is not in
fact maintained in the type of "system" envisioned by plaintiffs,
and (2) the information is not as relevant to plaintiffs' claims
as plaintiffs assert.  Indeed, much of the argument in the latest
round of briefing in each of the actions is devoted to the
parties' disputes over (1) the nature of the information
contained in the database; (2) the format in which it has been
kept; (3) Mobray's ability to access and analyze the information;
(4) what information has in fact already been disclosed to
plaintiffs; and (5) how much, if any, of the information
plaintiffs are entitled to at this time.

     The record in each of these cases is replete with references
to the GAO's electronic personnel information, in addition to a
limited amount of evidence relating to the disputed information
(most notably the Mobray deposition transcripts).  Upon review of
the evidence, the Court concludes that – at least insofar as the
format in which the data is kept and its susceptibility to
straightforward analysis is concerned – the agency's descriptions
of the information are more accurate than plaintiffs'.  Aside
from plaintiffs' conclusory assertions, there is nothing in the

record of these cases that would support a finding that the
information electronically amassed and maintained by Mobray can
be readily produced to plaintiffs for analysis, review, and use
in evidence.  To the contrary, Mobray's deposition testimony
makes clear that the information in fact exists in a number of
discrete systems of electronic files, and that the extraction of
the information sought by plaintiffs would require programming
and compilation efforts of varying degrees.

Likewise, plaintiffs' repeated allegations that the GAO
either wrongfully denied the existence of its electronic data or
wrongfully withheld such data finds no support in the record.  As
a preliminary matter, the Court notes that neither *Davis et al.*
nor *Moses* has proceeded to discovery of any kind, so allegations
of wrongful withholding from those plaintiffs are entirely
without merit.  In contrast, the GAO has produced evidence from
the *Chennareddy I* parties' lengthy pre-class certification
discovery period demonstrating that those plaintiffs did in fact
receive substantial information from the agency's electronic data
files.  Defendant correctly notes that the *Chennareddy I*
plaintiffs have not cited any discovery request that was answered
inaccurately or incompletely, a fact that substantially undercuts
their argument that information was improperly withheld.  There

is also no evidence suggesting any impropriety in the merits
discovery that took place in *Chennareddy II*.[21]

Any additional factual findings regarding the actual
contents of the GAO's personnel data are unnecessary at this
juncture.  What is clear is that regardless of the substance of
the data accessible to the GAO, plaintiffs have not demonstrated
that they are entitled to that information at this juncture.
Indeed, plaintiffs in all of the actions have in one way or
another fundamentally misconceived the role that discovery plays
within the Federal Rules of Civil Procedure and their entitlement
to that discovery.  By focusing so extensively on the purported
"database" and the agency's allegedly wrongful withholding
thereof, plaintiffs have lost sight of the pleading standards set
forth in Rule 8, the role of Rule 12 in permitting a defendant to
test the legal sufficiency of a plaintiff's complaint, and the
requirement under Rule 26 that a plaintiff demonstrate the
relevance of any requested discovery.  Where necessary, these
misapprehensions – in addition to the relevance, if any, of the
GAO's electronic personnel information – will be addressed more
fully in the discussions below.

---

[21]  As discussed in Section II.B.2 below, this conclusion carries
particular weight in *Chennareddy II*, where plaintiff has failed to make any
showing whatsoever of why information contained in the GAO's electronic files
that has not been produced to plaintiff is relevant to an adjudication of his
claims.

B.   **Resolution of Issues Currently Pending Before the Court**

   1.   *Chennareddy I*

Currently pending before the Court are plaintiffs' objections and appeal of the magistrate judge's February 4, 2009 Order granting defendant's motion for a more definite statement and denying plaintiffs' motion to compel.[22]   These rulings will be reviewed under Federal Rule of Civil Procedure 72(a) and affirmed unless "clearly erroneous or [ ] contrary to law," except that the portion of the magistrate judge's ruling prohibiting plaintiffs from relitigating the issue of class certification will be reviewed *de novo*.   *See* Fed. R. Civ. P. 72(a)-(b).

   i.   **Whether Defendant is Entitled to a More Definite Statement**

The magistrate judge did not clearly err in granting defendant's motion for a more definite statement.   To the contrary, the magistrate judge reasonably concluded that plaintiffs' fourth amended complaint is deficient under Federal Rules of Civil Procedure 8(a) and 10.   The complaint in its

_____

[22]   As part of this order, the magistrate judge also denied without prejudice defendant's motion for partial dismissal, which sought to dismiss with prejudice (1) any claims arising from events that occurred after January 3, 2006 (the last date any of the named plaintiffs was employed by the GAO); and (2) any claims against the PAB based on its processing of plaintiffs' complaints.   Given that plaintiffs will be filing yet another complaint in this case, the Court will not disturb the magistrate judge's denial without prejudice of defendant's requests for dismissal.   Nevertheless, the Court notes that any claims against the PAB plaintiffs might seek to raise in their amended complaint are clearly foreclosed by the analysis in Section II.A.1 above.

current form fails to identify (1) any relevant characteristics of the named plaintiffs (i.e., age, race, or gender); (2) the types of discrimination allegedly suffered by the named plaintiffs (i.e., discrimination based on age, race, national origin, gender, or some combination); (3) the alleged events that form the basis of their claims; or (4) when such events occurred. On this basis alone, the magistrate judge's determination that a more definite statement is warranted was entirely justified.

Moreover, this Court flatly rejects plaintiffs' contention that they cannot – or should not be required to – submit a more definite statement until they have been given access to the GAO's electronic personnel files.  Such an approach would permit plaintiffs to bypass the pleading stage of litigation entirely, sanctioning an approach under which plaintiffs could simply allege that the information held by defendant would prove their claims without actually stating what those claims are in the short and plain statement required by Rule 8(a).  The magistrate judge's rejection of plaintiff's argument on this score was not only reasonable, but absolutely correct.  This Court therefore affirms the ruling of the magistrate judge insofar as it requires plaintiffs to file an amended complaint that conforms with Federal Rules of Civil Procedure 8 and 10.  Accordingly, plaintiffs will be required to forthwith submit a complaint that (1) includes separately numbered *paragraphs* (as opposed to

33

*headings*); and (2) at a minimum, clearly identifies each of the named plaintiffs, including their individual claims against the GAO and the factual basis for those claims.

### ii.   Whether Plaintiffs are Entitled to Immediate Production of the GAO's Electronic Personnel Data

The magistrate judge's denial of plaintiffs' motion to compel was neither clearly erroneous nor contrary to law. Plaintiffs' motion to compel is based on their arguments relating to the GAO's electronic personnel information.  But as the Court discussed in Section II.A.4 above, there is simply no support in the record for plaintiffs' contention that any information was wrongfully withheld from them.  Plaintiffs also appear to conflate their entitlement to discovery for class certification and their entitlement to discovery on the merits of their claims.[23]  The former will be discussed at more length in the section that follows.  As for the latter, plaintiffs are simply not entitled to discovery on the merits of their claims *until they have properly pled such claims*.  For these reasons, the magistrate judge's denial of the motion to compel is affirmed.

---

[23]  Obviously, these two categories may overlap.  But such a distinction is important here, because plaintiffs fail to acknowledge that this case has not yet proceeded to discovery on the merits of their claims.

### iii. Class Certification

The magistrate judge's order stated that plaintiffs' amended complaint must be "confined to the claims of the named Plaintiffs."  Order at 2 n.1, *Chennareddy I*, Docket No. 412.  The parties agree that this limitation effectively extinguished the class claims in this action, and that this part of the magistrate judge's order should be reviewed *de novo*.  This Court agrees and, for the reasons discussed below, will vacate that portion of the order.

After a lengthy period of class discovery many years ago, the Court issued a ruling denying plaintiffs' motion to certify a class.  Before this case was transferred to this Court, plaintiffs sought reconsideration of this ruling on multiple occasions, but their requests were never considered on the merits.  In view of this fact, and in the interest of justice, this Court concludes that plaintiffs should be given one final opportunity to show cause why they should be permitted to continue to pursue class certification in this action.  The Court emphasizes that this ruling is *not* premised on a finding that defendant engaged in the wrongful withholding of evidence during the precertification discovery period.  As previously noted in Section II.A.4 above, this Court finds no support in the record for such a conclusion.  Nor is the Court's ruling intended to suggest that the Court disagrees with the previous denial of

class certification, the merits of which need not be addressed at this juncture.  Finally, the Court notes that plaintiffs should *not* take this briefing opportunity as an invitation to simply rebrief the issue of class certification.  Rather, plaintiffs must show cause *why* the previous ruling on class certification was in error and why such error mandates that plaintiffs be given a renewed opportunity to litigate the issue.  Specifically, plaintiffs must:

> (1) provide a clear, concise explanation of the information that was not available to them and/or wrongfully withheld from them during the initial period of class discovery and that undermines the Court's ruling on class certification;
>
> (2) explain why such information is necessary to a fair adjudication of the class certification issue; and
>
> (3) cite to legal authority supporting their contention that the Court's ruling on class certification was in error and their argument that they are entitled to an opportunity to relitigate the issue of class certification.

Such briefing will be permitted to proceed, however, only *after* plaintiffs file a complaint that comports with the Federal Rules of Civil Procedure.  Because of the inexcusable delay that has plagued the litigation of this case since its inception, the Court will impose abbreviated filing deadlines for both the filing of an amended complaint and plaintiffs' briefing showing

cause why they should be permitted to pursue class certification.

### 2. *Chennareddy II*

Pending before the Court are Chennareddy's appeal of and objections to the magistrate judge's (1) denial of his cross motion to reopen discovery, compel disclosure of the electronic personnel data, and for leave to amend his complaint;[24] and (2) report and recommendation that the Court grant the GAO's motion for partial summary judgment and deny as moot its motion for partial dismissal.   These issues will be addressed in turn.

> **i.   Whether the Magistrate Judge's Denial of Chennareddy's Request to Reopen Discovery and for Leave to Amend His Complaint is Clearly Erroneous or Contrary to Law**

As a preliminary matter, Chennareddy argues that his appeal of the magistrate judge's denial of his motion to reopen discovery and for leave to amend the complaint should be reviewed *de novo* by this Court, because the rulings are "tantamount to a dismissal" of his claims.   Pl.'s Objections to & Appeals from Magistrate Judge's Order(s) at 6, *Chennareddy II*, Docket No. 87. This argument finds no support either the facts of this case or

---

[24] That motion also included a request to consolidate this case with *Chennareddy I*, which the magistrate judge denied.   That ruling has not been appealed and the issue will not be addressed further by this Court.   *See* Pl.'s Objections to & Appeals from Magistrate Judge's Order(s) at, *Chennareddy II*, Docket No. 87.

in the law.  Therefore, as with other rulings on non-dispositive matters, the Court will review the magistrate judge's denial of the relief requested in Chennareddy's motion under the familiar standard of Federal Rule of Civil Procedure 72(a).  Rule 72(a) directs the Court to "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law."  Under this deferential standard, the magistrate judge's ruling must be affirmed "unless on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed."  *Collett v. Socialist People's Libyan Arab Jamahiriya*, 448 F. Supp. 2d 92, 95 (D.D.C. 2006) (internal quotation marks omitted).

Chennareddy relies on the allegedly wrongful withholding of the electronic personnel information discussed in Section II.A.4 above to support his request to reopen discovery and for leave to amend his complaint.  Specifically, Chennareddy contends that information from the electronic files should have been produced when the parties were engaged in discovery from 2001 to 2002.  According to Chennareddy, the GAO's failure to include this information in its Rule 26(a)(1) disclosures, or to acknowledge the existence of such data in response to Chennareddy's discovery requests, mandate the reopening of discovery before a ruling on defendant's potentially dispositive motion.  *See* Pl.'s Objections to & Appeals from Magistrate Judge's Order(s) at 8-9, *Chennareddy*

*II*, Docket No. 87.   Chennareddy also argues that unless he is permitted to amend his complaint, he will be unable to prove his claims relating to the pattern and practice of discrimination about which he complains.   *See* Pl.'s Objections to & Appeals from Magistrate Judge's Order(s) at 10, *Chennareddy II*, Docket No. 87.

The magistrate judge correctly noted that Chennareddy has failed to provide any justification for why he should be permitted to amend his complaint at this late juncture. Moreover, as the Court has noted, Chennareddy may not rely on the continuing violations doctrine to support his claims, so any attempt to amend his complaint on that basis would be futile. Chennareddy likewise fails to explain how any additional discovery would be relevant to (1) any of the discrete non-promotion claims alleged in his complaint; or (2) a ruling on the pending motion for summary judgment, which raises legal issues relating to exhaustion.   Finally, as the magistrate judge recognized, Chennareddy made similar requests to extend discovery and to compel disclosure – filed in response to the Mobray deposition conducted in June 2002 – that were considered on their merits and denied by the Court.   Because the magistrate judge's denial of Chennareddy's requests was not clearly erroneous or contrary to law, those rulings are affirmed.

ii. **The Court Will Adopt the Magistrate Judge's Report and Recommendation**

This Court's review of the magistrate judge's report and recommendation is governed by Federal Rule of Civil Procedure 72(b).  "When a party files written objections to any part of the magistrate judge's recommendation with respect to a dispositive motion, the Court considers *de novo* those portions of the recommendation to which objections have been made, and 'may accept, reject, or modify the recommended decision[.]'"  *Robinson v. Winter*, 457 F. Supp. 2d 32, 33 (D.D.C. 2006) (quoting Fed. R. Civ. P. 72(b)).

In its motion for partial dismissal or partial summary judgment, defendant seeks to dismiss all but five of the non-selection claims.  Defendant argues that (1) the Court lacks subject matter jurisdiction over claims that were previously adjudicated by the PAB; (2) a number of claims were not properly exhausted at the administrative level, and should therefore be dismissed; (3) Chennareddy did not actually apply for some of the promotion opportunities discussed in the complaint; and (4) some of Chennareddy's non-promotion claims should be limited to age only, because he did not raise Title VII claims at the administrative level.  The magistrate judge addressed each of these issues, concluding that only the five claims identified by defendant could survive summary judgment.  Although Chennareddy

40

objects to the magistrate judge's report and recommendation, he does not challenge the factual basis for the magistrate judge's conclusion that many of the claims in the complaint were not timely raised.  Rather, Chennareddy relies largely on the continuing violations/hostile work environment theory to justify his failure to exhaust administrative remedies.  This theory, however, is unavailing and must be rejected, as discussed in Section II.A.3 above.

Chennareddy also attempts to invoke the doctrines of equitable tolling and estoppel to save his non-exhausted claims, arguing that the agency's failure to process his claims and the withholding of evidence "precludes any dismissal on timeliness grounds."  Pl.'s Objections to & Appeals from Magistrate Judge's Order(s) at 13, *Chennareddy II*, Docket No. 87.  But as defendant correctly notes, Chennareddy never even articulates the legal standard for equitable tolling or estoppel.  Nor does he present facts demonstrating – or even suggesting – that he was unable to gather information about his claim or that the agency engaged in misconduct to prevent him from engaging in the administrative process. *See Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1182 (7th Cir. 2001) (recognizing that equitable estoppel requires active steps amounting "to a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his

charge," and noting that "[t]hey are typically acts of wrongdoing such as hiding evidence or promising not to rely on a statute of limitations defense" (internal quotations and citations omitted)).  In sum, Chennareddy has not carried his weighty burden of demonstrating that equitable doctrines should excuse his untimeliness in filing.  For these reasons, and upon careful review of the magistrate judge's report, the Court adopts in full the report and recommendation.  Defendant's motion for partial summary judgment will be granted.

### 3. *Davis et al.* and *Moses*

Currently pending before the Court in these actions are plaintiffs' appeals of the magistrate judge's orders striking the pleadings associated with defendants' motions to dismiss.  This Court agrees with plaintiffs that, particularly in view of the substantial delay that has already occurred in these cases, requiring the parties to completely rebrief defendants' requests for dismissal would cause substantial prejudice to plaintiffs.  Accordingly, and because this Court concludes that the magistrate judge's orders were contrary to Federal Rule of Civil Procedure 12,[25] this Court will vacate those orders, reinstate the briefing

---

[25]  A magistrate judge's ruling on a non-dispositive matter may only be overturned if that ruling is clearly erroneous or contrary to law.  *See* Fed. R. Civ. P. 72(a).  The Court concludes that this standard has been met here. Rule 12(f)(1) grants a court the authority to, on its own, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). As a preliminary matter, it is far from clear that the briefing on defendants' motions to dismiss qualify as material to be stricken from the record under Rule 12.  *See Modaressi v.*

on defendants' motions, and proceed to consider the merits of the
parties' arguments in both cases.  Because of the substantial
overlap between both the plaintiffs in these cases and the claims
raised, this Court will address both of defendant's motions in
tandem.

### i.   Standard of Review

The magistrate judge correctly noted that the parties in
both *Davis et al.* and *Moses* submitted materials that are not
properly considered under Federal Rule of Civil Procedure
12(b)(6).  *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196
(D.D.C. 2002) (noting that in deciding a motion to dismiss under
Rule 12(b)(6), a court may consider only "the facts alleged in
the complaint, documents attached as exhibits or incorporated by
reference in the complaint, and matters about which the Court may
take judicial notice").  Pursuant to Rule 12(d), the Court will
convert those portions of defendant's motion brought under Rule
12(b)(6) to a motion for summary judgment under Rule 56.

Rule 56 permits the Court to grant summary judgment only if
the moving party has shown that there are no genuine issues of

---

*Vedadi*, 441 F. Supp. 2d 51, 54 n.2 (D.D.C. 2006) (noting that a motion to
dismiss is not a pleading for Rule 12(f) purposes; *see also* Fed. R. Civ. P. 7
(defining pleadings as distinct from motions).  Assuming, however, that the
struck material does fall under Rule 12, there is nothing in the record to
suggest that the material is "redundant, immaterial, impertinent, or
scandalous."  The proper course for addressing material attached to a motion
to dismiss brought under Rule 12(b)(6) is found in Rule 12(d), which permits
the Court to either exclude the material from consideration, or to treat the
motion "as one for summary judgment under Rule 56, giving "[a]ll parties . . .
a reasonable opportunity to present all the material that is pertinent to the
motion."  Fed. R. Civ. P. 12(d).

material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. Of Columbia*, 298 F. 3d 989, 991 (D.C. Cir. 2002). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323. In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To survive a motion for summary judgment, plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

On the other hand, to the extent that defendant has raised issues properly considered under Rule 12(b)(1) standards, "it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); *see Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198

44

(D.C. Cir. 2003); *Herbert v. Nat'l Acad. of Sciences.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

> **ii.   Whether All of Plaintiffs' Non-ADEA Claims are Subject to Dismissal**

Defendant seeks dismissal of plaintiffs' Equal Pay Act claims because (1) that statute does not cover age-based discrimination; and (2) even if it did, the amount of damages requested by plaintiffs ($300,000) require that any Equal Pay Act claim be raised in the Court of Federal Claims.  Plaintiffs in both cases did not address these arguments in their oppositions to defendant's motions, and the request to dismiss these claims will therefore be granted as unopposed.  *See Tnaib v. Document Tech., Inc.*, 450 F. Supp. 2d 87, 91 (D.D.C. 2006) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded.") (quotation omitted); *see also Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.").  Plaintiffs have similarly failed to address defendants' arguments for dismissal of any and

all constitutional claims, and these claims will likewise be
dismissed.[26]

Defendant also seeks to dismiss any claims brought by
plaintiffs against the PAB.  As Section II.A.1 makes clear, the
Court agrees that the complaints in these actions must be
dismissed insofar as claims against the PAB are concerned.
Accordingly, the only claims remaining in these actions are
plaintiffs' ADEA claims.

### iii. Davis and Gilbert's ADEA Claims

Defendant argues that both Davis's and Gilbert's ADEA claims
are subject to dismissal because they failed to comply with the
notice requirements set forth in 29 U.S.C. § 633a(d).[27]  As
defendant points out, the *Davis et al.* complaint is almost
entirely devoid of specific allegations regarding the
discriminatory actions allegedly taken against Davis or Gilbert
or when such actions were taken.  A review of the complaint,
however, does make clear that neither plaintiff filed a Notice of

---

[26] Alternatively, these claims would fail on the merits because the
ADEA provides an exclusive remedy for discrimination claims brought by federal
employees. *See, e.g., Lutes v. Goldin*, 62 F. Supp. 2d 118, 134 (D.D.C. 1999)
("Courts in this jurisdiction have relied upon *Brown* [*v. GSA*, 425 U.S. 820
(1976),] and *Thorne* [*v. Cavazos*, 744 F. Supp. 348, 351-52 (D.D.C.1990)),]
repeatedly to bar constitutional challenges arising under claims of federal
employment discrimination.").

[27] Defendant also contends that plaintiffs' claims are untimely because
the complaint was filed outside the applicable statute of limitations period.
Because this Court agrees with the agency that plaintiffs did not comply with
the notice requirement, however, it need not reach this argument.

Intent to Sue within 180 days of any alleged discriminatory action by the agency.

Davis and Gilbert contend that they both filed two Notices of Intent to Sue – one in 2000[28] and one on April 6, 2005.  Davis, however, claims that he was "constructively discharged" from the GAO on June 1, 2004, Compl. at 4, *Davis et al.*, Docket No. 1. Accordingly, because Davis left the GAO more than 180 days before April 6, 2005, this notice cannot form the basis of a properly exhausted claim.  Davis, moreover, identifies no discriminatory practice that occurred within 180 days of his 2000 notice. Rather, he simply refers generally to reduced performance ratings, "humiliation and degradation in his leadership status," and "generalized and unwarranted abuse."  Compl. at 6-7, *Davis et al.*, Docket No. 1.  These vague allegations are insufficient to demonstrate that his claims were exhausted.  *See Morgan*, 536 U.S. at 110-11 (requiring specific identification of a challenged employment practice).

The allegations relating to Gilbert are similarly vague and lacking in any detail about when the alleged downgrading of his performance ratings or withholding of favorable assignments occurred.  *See* Compl. at 7-8, *Davis et al.*, Docket No. 1.   Like Davis, Gilbert has failed to point to a specific employment

---

[28]   The GAO has no record of these notices.  For the purposes of this analysis, however, the Court takes the facts in the light most favorable to plaintiffs and assumes that such notices were filed.

action that occurred within 180 days of the filing of either
Notice of Intent to Sue.  Indeed, Gilbert alleges that he "took
early retirement" in June 1999, *see* Compl. at 8-9, *Davis et al.*,
Docket No. 1, which means that both notices were necessarily
filed outside § 633a(d)'s 180-day time limit.

Neither Davis nor Gilbert disputes the facts upon which the
above analysis is based.  They nevertheless contend that the
exhaustion requirements should not apply because of the
misconduct of the GAO and its failure to comply with its own
regulations for processing discrimination complaints.  These
arguments will be addressed in Section II.B.3.v below.

### iv.  Moses's ADEA Claims

Many of Moses's allegations relating to downgraded
performance ratings and being "relegated in job assignments to
reporting to younger staff" suffer from the same problems as
those identified with respect to Davis and Gilbert.  *See* Compl.
at 9, *Davis et al.*, Docket No. 1.  Moses, however, has identified
two specific, discrete allegedly discriminatory actions: the Band
II restructuring that took place between December 2005 and
January 2006 and which resulted in his demotion, and the denial
of COLAs in February 2006.  *See, e.g.*, Compl. at 15-17, *Moses*,
Docket No. 1; Compl. at 10-11, *Davis et al.*, Docket No. 1.
Because Moses is a named plaintiff in both actions, and in view
of the overlap of the allegations, a consolidated analysis of the

claims he has raised will provide the clearest assessment of what has been timely raised, which claims are cognizable, and in which action such claims properly belong.

Unlike Davis and Gilbert who only availed themselves of the direct route to federal court provided by 29 U.S.C. § 633a(d), Moses pursued his claims both directly through § 633a(d) and also through the administrative process contemplated by § 633a(b).   In the *Davis et al.* complaint, Moses alleges that he made the following efforts to comply with the ADEA's procedural requirements: he filed a Notice of Intent to Sue in 2000;[29] an administrative complaint with the GAO in 2002; a Notice of Intent to Sue on April 6, 2005; and an administrative complaint with the GAO on February 17, 2006.   *See* Compl. at 9-12, *Davis et al.*, Docket No. 1.   The *Moses* complaint references these filings, and also includes two additional attempts by Moses at exhaustion: an administrative complaint filed on March 30, 2006; and another Notice of Intent to Sue filed on August 9, 2006 (received by the GAO on August 14, 2006).   *See* Compl. at 11-12, *Moses*, Docket No. 1.

As a preliminary matter, defendant contends (in both *Davis et al.* and *Moses*) that the 2000 and 2005 Notices of Intent to Sue were not filed within 180 days of an alleged discriminatory

---

[29]   As with Davis and Gilbert, the GAO claims that it cannot locate this notice.   Taking the facts in the light most favorable to Moses, the Court will assume that such notice was in fact filed.

practice.  The Court agrees.  Like Davis and Gilbert, Moses has
not identified any allegedly discriminatory action taken by the
GAO within 180 days of those notices.  Accordingly, any such
claims have not been exhausted.[30]

The Court also agrees with defendant that because the Band
II restructuring occurred *after* the filing of Moses's 2005 Notice
of Intent to Sue, any claim based on the restructuring was not
covered by that notice.  *Cf. Morgan*, 536 U.S. at 113 (holding
that because "[e]ach discrete discriminatory act starts a new
clock for filing charges alleging that act," Title VII requires
that a new charge must be filed within the statutory time period
*after* the act occurs).  Therefore, the Band II restructuring
claim will be dismissed from the *Davis et al.* action.  Defendant
acknowledges, however, that Moses *did* subsequently comply with
the requirements of 29 U.S.C. § 633a in pursuing this claim at
the administrative level, and that the claim has been properly
raised in the *Moses* action.

Next, defendant argues (again in both *Davis et al.* and
*Moses*) that the claims raised in Moses's 2002 administrative
complaint – discrimination and retaliation claims based on
lowered performance ratings – were not accompanied by any
materially adverse consequences.  The agency thus contends that

---

[30] Based on this conclusion, the Court need not reach defendant's
argument that the claims were not filed within the statute of limitations.

such claims are not cognizable under the ADEA.  *See, e.g.*,
*Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 75-76 (D.D.C. 2007).
Plaintiff had the opportunity – and the obligation – to rebut
this argument not once, but twice.  Because he failed to do so,
these claims are deemed conceded and will be dismissed.  *See,
e.g.*, *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2002)
(granting summary judgment on discriminatory non-selection claim
where plaintiff "had the opportunity to respond to all of the
challenges to the claims in his complaint," but failed to respond
to defendant's arguments).

Defendant's final argument, made in the *Moses* action only,
is that plaintiff's August 2006 Notice of Intent to Sue was filed
more than 180 days after the effective date of either the Band II
restructuring or the determination of plaintiff's eligibility for
a COLA.  As noted above, the Band II restructuring claim may
proceed because plaintiff exhausted it by way of the
administrative process.  This leaves plaintiff's COLA claim.  In
its responses to plaintiffs' objections and appeal of the
magistrate judge's order, defendant acknowledged that
supplemental briefing might be warranted in view of the passage
of the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, §
4(3), 123 Stat. 5, 6.  *See* 29 U.S.C. § 626(d)(3) ("[A]n unlawful
practice occurs, with respect to discrimination in compensation
in violation of [the ADEA], when a discriminatory compensation

decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."). The Court agrees that such briefing should be filed in the *Moses* action. Therefore, defendants' motion to dismiss in *Moses* will be denied without prejudice as to plaintiff's discrimination claim arising from the alleged denial of a COLA.

### v.  Whether the Application of Equitable Doctrines is Warranted

Plaintiffs make no attempt to challenge the factual basis for defendant's arguments relating to the untimeliness of their claims. Rather, they argue that equitable tolling and equitable estoppel should bar defendant's reliance on plaintiffs' failure to exhaust, because (1) the GAO's administrative process "is defective and meaningless," and the agency failed to follow its own regulations for the processing of administrative complaints; and (2) the agency acted in bad faith by withholding the electronic personnel data in *Chennareddy I*, into which plaintiffs attempted to intervene. Neither of these arguments is sufficient to persuade the Court that equitable doctrines should apply in this case.

Plaintiffs' allegations regarding the defects in the GAO's administrative process are insufficient to justify invoking equitable doctrines to excuse the failure to comply with 29 U.S.C. § 633a.  Most of plaintiffs' complaints relate to the failure to give notice of procedures as required by the agency's regulations and the substantial delay in processing administrative complaints.  Although these are serious allegations, they do not lead to the logical conclusion that the agency is intentionally interfering with employees' rights under the ADEA.  Importantly, plaintiffs do *not* claim that they were unaware of the ADEA's procedural requirements or that the failures of the GAO's administrative process actually prevented plaintiffs from timely filing their claims.  This conclusion is underscored by the ADEA itself, which expressly permits employees to bypass the agency's administrative process altogether and file a claim directly in federal court.

The Court also rejects plaintiffs' attempts to cast aspersions on the GAO for its alleged withholding of electronic personnel data, which is most properly viewed as an argument in favor of equitable estoppel.  As discussed in Section II.A.4 above, these allegations find no support in the record.  More to the point, any wrongdoing that took place in *Chennareddy I*, if any, is entirely irrelevant to the *Davis et al.* and *Moses* plaintiffs.  Until now, plaintiffs in these actions were not

53

entitled to discovery.  Their reliance on what took place in a
separate action – into which they have repeatedly, but
*unsuccessfully*, sought to intervene – is patently inadequate to
clear the extraordinarily high hurdle required to invoke
equitable estoppel against the government.  *See, e.g.*, *United
States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 70 (D.D.C.
2004) ("[N]either the Supreme Court nor this Circuit has ever
upheld a finding of equitable estoppel against the Government.");
*Rann*, 346 F.3d at 197 (recognizing the "powerful cautions"
against applying equitable estoppel against the government).  For
these reasons, any and all claims that were not properly raised
under 29 U.S.C. § 633a will be dismissed.

## III.  Conclusion

For the reasons stated above, the Court rules as follows:

### A.  *Chennareddy I*, Civ. Action No. 87-3538

The portions of the magistrate judge's order granting
defendant's motion for a more definite statement and denying
plaintiffs' motion to compel are **AFFIRMED**.  The magistrate
judge's order is **VACATED** insofar as it prohibits plaintiffs from
including class claims in their amended complaint.  Plaintiffs
will be permitted to submit briefing showing cause why the
Court's refusal to certify a class was in error and why they
should be permitted to continue litigating class claims after an

54

amended complaint complying with Federal Rules of Civil Procedure 8 and 10 is filed.

**B.    *Chennareddy II*, Civ. Action No. 01-0517**

The magistrate judge's order denying plaintiff's requests to consolidate, to reopen discovery, and for leave to amend the complaint is **AFFIRMED**.  The magistrate judge's report and recommendation is **ADOPTED**, and defendant's motion for partial summary judgment is **GRANTED**.  Defendant's motion for partial dismissal is **DENIED AS MOOT**.

**C.    *Davis et al.*, Civ. Action No. 06-1002**

The magistrate judge's order striking the pleadings is **VACATED**, and defendant's motion to dismiss is **GRANTED**. Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

**D.    *Moses*, Civ. Action No. 06-1712**

The magistrate judge's order striking the pleadings is **VACATED**.  Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART** without prejudice to refiling in connection with the parties' supplemental briefing on the impact, if any, of the Lilly Ledbetter Fair Pay Act of 2009.

When filing the appropriate pleadings and briefs referenced herein, plaintiffs are cautioned to only make arguments consistent with this opinion and not attempt to relitigate matters already decided.  An appropriate order will accompany this Memorandum Opinion.

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **December 18, 2009**